**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Teresa Mechell GRIFFIN,**
**Defendant–Appellant.**

No. 94–6195.

United States Court of Appeals,
Tenth Circuit.

Feb. 23, 1995.

Vicki Miles–LaGrange, U.S. Atty., Leslie M. Maye, Asst. U.S. Atty., Oklahoma City, OK, for plaintiff-appellee.

David P. Henry, Oklahoma City, OK, for defendant-appellant.

Before ANDERSON, BALDOCK, and BRORBY, Circuit Judges.

BALDOCK, Circuit Judge.

Defendant Teresa Mechell Griffin appeals asserting the district court failed to suppress evidence pursuant to our remand instruction in *United States v. Griffin,* 7 F.3d 1512 (10th

Cir.1993). Additionally, Defendant contends the district court committed sentencing errors. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We affirm.

The facts underlying Defendant's conviction are set forth in *Griffin*, 7 F.3d at 1514–15; however, we restate the facts relevant to the instant appeal. Defendant managed a cocaine distribution ring with her common law husband Juan Carlos Angulo–Lopez.[1] Specifically, Defendant and her husband obtained cocaine powder in Houston and transported it to Oklahoma City where they converted it to crack cocaine or instructed other members of the conspiracy to convert it to crack cocaine. They then acted as wholesalers and distributed the crack to retail sellers. The operation involved fourteen participants charged as conspirators who distributed as much as 47.82 kilograms of cocaine powder or cocaine base. All charges against Defendant arose from her involvement in this cocaine distribution activity.

Defendant's role in the cocaine distribution ring ended on October 21, 1991 when a police officer apprehended her and a companion, Bedina Coleman,[2] at the Oklahoma City airport terminal with approximately $38,500 in cash from cocaine sales. The police officer questioned Defendant regarding the cash. Later, a second police officer arrived and questioned Defendant in a private room. During the second encounter, Defendant confessed that the cash was derived from drug sales, gave a lengthy description of her drug related activities, and led the agents to her car where approximately one-half pound of cocaine was found. Additionally, the police obtained a telephone pager and documents from Defendant. The police used the numbers stored within the pager and additional information obtained from Defendant in part to obtain search warrants for Alfred Barber's residence and Defendant's Houston, Texas residence, and to identify individuals involved in the conspiracy who later testified against Defendant.

Defendant filed a motion to suppress the evidence which the district court denied following an evidentiary hearing. Defendant appealed the district court's denial of her motion to suppress, arguing principally that her confession was invalid because she was in custody during the interrogation and the police failed to advise her as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). On appeal, we concluded that the second encounter between Defendant and the police constituted custodial interrogation which should have been preceded by a *Miranda* warning. *See Griffin*, 7 F.3d at 1519. Thus, we reversed and remanded to the district court "with instructions to grant [Defendant's] motion to suppress evidence adduced by Officer Hughes during the second police encounter." *Id.*

On remand, the district court requested briefs and held an evidentiary hearing to determine what evidence had to be suppressed under our remand instruction. Defendant argued that the police infringed her Fifth Amendment rights during the second encounter, and as a result, under the "fruit of the poisonous tree" doctrine, all evidence, including testimonial evidence, which flowed from the constitutional violation must be suppressed. Specifically, Defendant argued that the police used the telephone numbers from her pager, and information gleaned from her statements to identify and investigate individuals who ultimately testified against her at trial. Their testimonial evidence, argued Defendant, fell within our remand instruction "to suppress evidence adduced by Officer Hughes during the second police encounter." *Id.*

The government disagreed, and argued that despite the Fifth Amendment violation the bulk of the evidence it sought to introduce against Defendant fell within the independent source and inevitable discovery exceptions to the exclusionary rule. The government offered uncontroverted testimony of Federal Bureau of Investigation ("FBI") Special Agent Jon Hersley in support of its contention that the exceptions to the exclusionary rule applied. Specifically, Special

---

1. *See United States v. Angulo–Lopez*, 7 F.3d 1506 (10th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1563, 128 L.Ed.2d 209 (1994).

2. *See United States v. Coleman*, 7 F.3d 1500 (10th Cir.1993).

Agent Hersley testified that by mid–1989 the Oklahoma City Police Department ("OCPD") was investigating Juan Carlos Angulo–Lopez and his drug distribution activities, had identified Defendant as a participant, and determined that Defendant's apartment was used in the conspiracy.

Further, Special Agent Hersley testified that during the eight months preceding Defendant's arrest the FBI, the Bureau of Alcohol, Tobacco and Firearms ("BATF"), the OCPD, and the Oklahoma Bureau of Narcotics and Dangerous Drugs ("OBNDD") were actively investigating Juan Carlos Gonzales, a participant in the drug ring managed by Defendant and her husband. Based on information acquired prior to October 21, 1991 the BATF set up a controlled buy between Gonzales and an informant on December 2, 1991. After his arrest, Gonzales provided the government with detailed information regarding the drug distribution organization managed by Defendant and her husband, including their identities, modus operandi, roles in transactions, and the dates of and quantities involved in specific drug sales. Gonzales also identified Bedina Coleman, Vernon King, Ezzard Scruggs, Brent Smiley, and Margaret Patterson as participants in the drug ring.[3]

Gonzales, the government argued, was arrested based on an investigation initiated prior to October 21, 1991, and founded on information obtained entirely independent of Defendant. The government maintained, therefore, that Gonzales constituted an independent source of the evidence introduced against Defendant, including the testimonial evidence provided by King, Scruggs, Smiley, and Patterson. Special Agent Hersley also testified that prior to Defendant's arrest, the OCPD independently knew from sources other than Gonzales of the drug related activities of Vernon King, Ezzard Scruggs, Alfred Barber, and Brent Smiley. The government contended that based on the FBI, BATF, OCPD, and OBNDD investigations of Gonzales and others, and the drug related activities of Defendant and her husband, the government would have inevitably discovered the evidence introduced against Defendant.

The district court ruled that based on our opinion in *Griffin*, 7 F.3d at 1515–19, the second encounter between Defendant and the police at the airport amounted to a violation of Defendant's Fifth Amendment rights. However, the district court concluded that the government had shown that the exceptions to the exclusionary rule applied to a majority of the testimonial evidence it sought to introduce against Defendant. Thus, the district court granted Defendant's motion to suppress in part, and denied it in part. The district court suppressed Defendant's statements to the police during the second encounter, cocaine found in her car at the airport, information obtained from her pager, documents seized from her purse, evidence seized from Alfred Barber's residence, and evidence found in a search of Defendant's Houston, Texas residence. However, the district court ruled that based on the testimony offered by Special Agent Hersley, the government had shown by a preponderance of the evidence that the remainder of the testimonial evidence fell within the independent source and inevitable discovery exceptions to the exclusionary rule. Thus, the district court did not suppress the bulk of testimonial evidence sought to be introduced against Defendant at trial, including that offered by Juan Carlos Gonzales, Vernon King, Ezzard Scruggs, Brent Smiley, Margaret Patterson, and Alfred Barber.

At trial, the jury convicted Defendant of four drug-related counts, including conspiracy to possess cocaine with intent to distribute, 21 U.S.C. § 841(a)(1), two counts of distribution of cocaine, 21 U.S.C. § 841(a)(1), and unlawful travel in interstate commerce with intent to carry on unlawful activity, 18 U.S.C. § 1952(a)(2), (3). Respectively, the district court sentenced Defendant to concurrent sentences of life, two 480–month sentences, and a 60–month sentence. This appeal followed.

On appeal, Defendant maintains the district court erred in failing to suppress the

---

**3.** Vernon King, Ezzard Scruggs, Brent Smiley, and Margaret Patterson testified against Defendant at trial.

evidence introduced against her pursuant to our remand instruction. Specifically, Defendant argues that the government failed to demonstrate by a preponderance of the evidence that the independent source and inevitable discovery exceptions to the exclusionary rule applied to the testimonial evidence the government introduced against her at trial.[4]

"A district court's ruling on a motion to suppress based upon live testimony at a suppression hearing is accepted unless clearly erroneous or influenced by an incorrect view of the law." *United States v. Wilson*, 36 F.3d 1298, 1303 (5th Cir.1994); *see also United States v. Rinke*, 778 F.2d 581, 589 (10th Cir.1985). We view the evidence "in the light most favorable to the party that prevailed below." *Wilson*, 36 F.3d at 1303. However, we review questions of law de novo. *Id.*

"Under the 'fruit of the poisonous tree' doctrine, the exclusionary rule bars the admission of physical evidence and live witness testimony obtained directly or indirectly through the exploitation of police illegality." *Hamilton v. Nix*, 809 F.2d 463, 465 (8th Cir.), *cert. denied*, 483 U.S. 1023, 107 S.Ct. 3270, 97 L.Ed.2d 768 (1987) (citing *Wong Sun v. United States*, 371 U.S. 471, 484–88, 83 S.Ct. 407, 415–18, 9 L.Ed.2d 441 (1963)). The Court, however, has recognized three exceptions to the exclusionary rule which permit the use of tainted evidence if the prosecution shows by a preponderance of the evidence, *Nix v. Williams*, 467 U.S. 431, 444 & n. 5, 104 S.Ct. 2501, 2509 & n. 5, 81 L.Ed.2d 377 (1984), that the evidence sought to be introduced was or could have been secured "by means sufficiently distinguishable to be purged of the primary taint." *Wong Sun*, 371 U.S. at 487–88, 83 S.Ct. at 417–18. Evidence obtained in violation of the Fourth, Fifth, or Sixth Amendments[5] may be admitted if it: (1) has but an attenuated link to the underlying illegality, *United*

*States v. Ceccolini*, 435 U.S. 268, 273–79, 98 S.Ct. 1054, 1058–62, 55 L.Ed.2d 268 (1978); (2) derived from a source independent of the illegal conduct, *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392, 40 S.Ct. 182, 183, 64 L.Ed. 319 (1920); or (3) would have been inevitably discovered absent the illegality, *Williams*, 467 U.S. at 444, 104 S.Ct. at 2509. *See also · United States v. Romero*, 692 F.2d 699, 704 (10th Cir.1982) (listing exceptions to exclusionary rule).

The independent source doctrine permits the introduction of "evidence initially discovered during, or as a consequence of, an unlawful search, but later obtained independently from activities untainted by the initial illegality." *Murray v. United States*, 487 U.S. 533, 537, 108 S.Ct. 2529, 2533, 101 L.Ed.2d 472 (1988); *see also United States v. Carson*, 793 F.2d 1141, 1149 (10th Cir.), *cert. denied*, 479 U.S. 914, 107 S.Ct. 315, 93 L.Ed.2d 289 (1986). The ultimate inquiry is whether the alleged independent source is "in fact a genuinely independent source of the information and tangible evidence at issue." *Murray*, 487 U.S. at 542, 108 S.Ct. at 2536; *see also Hamilton*, 809 F.2d at 467 ("The critical inquiry under the independent source doctrine is whether the challenged evidence was obtained from lawful sources and by lawful means independent of the police misconduct.").

The inevitable discovery doctrine allows the introduction of evidence acquired in violation of a defendant's Fourth, Fifth, or Sixth Amendment rights "if the evidence would have been inevitably discovered through independent legal means." *United States v. Ford*, 22 F.3d 374, 377 (1st Cir.), *cert. denied*, —— U.S. ——, 115 S.Ct. 257, 130 L.Ed.2d 177 (1994). "If the prosecution can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means ... then ... the evidence should · be re-

---

4. Our resolution of this issue has been hindered because Defendant's brief fails to specifically identify which individual witnesses Defendant believes delivered testimony tainted by the Fifth Amendment violation. Apparently, Defendant contends that the district court should have suppressed the government's entire case in chief.

5. Although developed under the Fourth Amendment, the exclusionary rule exceptions apply to evidence obtained in violation of the Fifth and Sixth Amendments. *See Murray v. United States*, 487 U.S. 533, 537, 108 S.Ct. 2529, 2533, 101 L.Ed.2d 472 (1988); *Williams*, 467 U.S. at 442 & n. 3, 104 S.Ct. at 2508 & n. 3; *United States v. Terzado–Madruga*, 897 F.2d 1099, 1112–13 (11th Cir.1990).

ceived." *Williams,* 467 U.S. at 444, 104 S.Ct. at 2509. "Accordingly, as long as it can be shown by 'demonstrated historical facts' that an independent and untainted discovery would inevitably have occurred, the evidence will be admissible." *Terzado–Madruga,* 897 F.2d at 1114 (citation omitted).

■ Applying these principles to the instant case, we first conclude that the government established by a preponderance that Juan Carlos Gonzales constituted an independent source of the majority of the evidence introduced against Defendant at trial. Special Agent Hersley testified that the FBI, BATF, OCPD, and OBNDD had initiated investigations of Juan Carlos Gonzales prior to Defendant's arrest. Gonzales was arrested after a controlled buy involving a BATF confidential informant. Neither the BATF informant nor the information which lead the law enforcement agencies to focus on Gonzales were derived from Defendant's October 21, 1991 encounter with the police. Thus, the extensive information the government obtained from Gonzales regarding Defendant's modus operandi, role in the conspiracy, specific drug transactions, and the identity of other coconspirators was acquired in a lawful manner independent of the October 21, 1991 Fifth Amendment violation. Additionally, Gonzales specifically identified Defendant, Juan Carlos Angulo–Lopez, Bedina Coleman, Vernon King, Ezzard Scruggs, Brent Smiley, and Margaret Patterson as participants in the drug ring. Gonzales, therefore, constituted a "genuinely independent source," *Murray,* 487 U.S. at 542, 108 S.Ct. at 2536, of the testimonial evidence offered against Defendant at trial.

■ We further conclude the government demonstrated by a preponderance of the evidence that the testimony it sought to introduce against Defendant would have inevitably been discovered through independent legal means. Special Agent Hersley testified at the suppression hearing that prior to October 21, 1991 the OCPD had identified Defendant and her husband as drug distributors. Additionally, the OCPD was investigating the drug related activities of Vernon King, Ezzard Scruggs, Alfred Barber, and Brent Smiley. When combined with the detailed information the government independently acquired from Gonzales, the ongoing investigations by the government would have resulted in the inevitable discovery of the witnesses who testified against Defendant. Thus, we conclude the government established by a preponderance that the testimonial evidence it sought to introduce "ultimately or inevitably would have been discovered by lawful means." *Williams,* 467 U.S. at 444, 104 S.Ct. at 2509. We hold, therefore, that the district court was not clearly erroneous in finding that the government had shown by a preponderance of the evidence that the testimonial evidence it sought to introduce against Defendant fell within the independent source or inevitable discovery exceptions to the exclusionary rule.

Finally, Defendant maintains the district court committed sentencing errors. Specifically, Defendant argues the district court erred by: (1) estimating the total amount of cocaine as 34 kilograms; (2) designating the cocaine as 34 kilograms of cocaine base instead of 30 kilograms of cocaine powder and 4 kilograms of cocaine base; (3) failing to award her a two level reduction for acceptance of responsibility; and (4) increasing her base offense level four levels for her role as an organizer or leader of criminal activity involving five or more participants.[6]

With Defendant's alleged sentencing errors in mind, we have reviewed the briefs of the parties, the Presentence Investigation Report, the transcripts of the sentencing hearing, the sentence imposed by the district court, and carefully examined the entire record before us. Based upon our review of the record, we find that Defendant's alleged sentencing errors are without merit.

AFFIRMED.

---

**6.** Additionally, Defendant asserts for the first time on appeal that the life sentence imposed by the district court constitutes cruel or unusual punishment in violation of the Eighth Amendment of the United States Constitution. We do not address Defendant's argument, however, because she failed to raise it before the district court below. *See Hicks v. Gates Rubber Co.,* 928 F.2d 966, 970 (10th Cir.1991).