**UNITED STATES of America,**
**Plaintiff,**

v.

**Lewis Dean BILLINGS, Defendant.**

**No. 03–40056–01–SAC.**

United States District Court, D. Kansas.

Nov. 7, 2003.

Thomas G. Luedke, Office of United States Attorney, Topeka, KS, for plaintiff.

Marilyn M. Trubey, Office of Federal Public Defender, Topeka, KS, for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

In this case, defendant is charged with one count of attempting to pass a counterfeit $10.00 bill on or about January 11, 2002, and one count of possession of 35 counterfeit $10.00 bills on or about January 17, 2002. The case comes before the court on defendant's motion to compel discovery regarding an informant (Dk. 22), and defendant's motion to suppress (Dk. 23). Having heard the evidence and reviewed the briefs, the court is ready to rule.

## FACTS

In early January of 2002, Officer Gary Hanus of the Salina Police Department was contacted by an anonymous source who told him that defendant was involved in distributing methamphetamine and in counterfeiting. On January 7, 2002, the same officer was contacted by Jim Vogt, who stated that he worked with defendant. Vogt offered to assist in making a drug case against defendant. Vogt believed defendant was dealing drugs from his workplace, and did not want to be implicated due to the fact they worked together, so agreed to make controlled buys from defendant.

On January 11, 2002, an employee of a store in Salina notified Officer Smith of the Salina Police Department that he had received a fake ten dollar bill from a customer, identified as this defendant.

On January 14, 2002, Vogt participated in a controlled buy in which he purchased two 8-balls of methamphetamine from defendant at their place of employment. On January 15, 2002, Vogt told DEA agents that while he had been in defendant's residence the previous evening, he had seen defendant cutting out ten dollar bills he had made on his computer.

Also on the 15th, Vogt participated in another attempted controlled buy. Prior to entering defendant's residence, Vogt was fitted with a body wire so that the transaction could be monitored by police. A child let him into defendant's house, where he waited approximately 15 minutes. Defendant then returned to the house, and was confronted soon thereafter by uniformed officers who, unaware of the undercover operation, were looking for his brother in connection with another offense. When the officers left, defendant turned on a police scanner, which caused feedback on the microphone Vogt was wearing. Noticing the feedback, defendant voiced his suspicion that police had bugged his house and/or Vogt's cell phone. Vogt made an excuse to leave, aborted the buy, and left the house at approximately 10:10 p.m. Vogt informed the waiting officers that defendant knew he was wearing a wire, causing the officers to believe that the operation had been compromised.

Officers decided immediately thereafter to arrest defendant on the basis of probable cause derived from the controlled buy the night before, and to prevent the destruction of evidence. Officer Gary Hanus immediately left defendant's residence and went to the Salina police department to start compiling information for a search warrant affidavit. Officer Hanus testified that it took him nearly four hours to prepare the search warrant affidavit, to find a judge to present it to, and to get it signed.

At approximately 10:50 p.m., defendant was arrested in his residence by uniformed officers other than Officer Hanus, then was taken to the Salina police department. Officers conducted a security sweep of the residence soon after defendant's arrest, to determine whether anyone else was present. Testimony regarding the nature and extent of that protective sweep of the residence at the time of defendant's arrest is disputed, and is discussed in detail below. Several hours after the protective sweep,

the search warrant was executed.[1] During the search pursuant to warrant, counterfeit money and computer equipment and information was seized, which defendant seeks to suppress.

## MOTION TO SUPPRESS

Defendant contends that all evidence seized in his residence should be suppressed because police officers unlawfully entered his home to arrest him without a warrant and without probable cause and exigent circumstances, in violation of *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). The government admits that defendant was arrested without a warrant inside his residence, and does not contend that the arrest was pursuant to any exigent circumstances.[2] Instead, it states that even assuming the arrest in the home violated the Fourth Amendment, no evidence should be suppressed because no evidence was recovered as a result of the illegal arrest. Rather, all evidence was recovered later, pursuant to the search warrant. Further, the government contends that all evidence should be admissible pursuant to the inevitable discovery or independent source rule.

### General Law

The Tenth Circuit recently reviewed the relevant law in these words:

> In *Payton*, 445 U.S. at 590, 100 S.Ct. 1371, 63 L.Ed.2d 639, the Supreme Court held, in terms that apply "equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." (emphasis added). The Court noted that the

"'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" *Id.* at 585, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (quoting *United States v. United States District Court*, 407 U.S. 297, 313, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972)); *see also United States v. Maez*, 872 F.2d 1444, 1450–51 (10th Cir.1989). The Supreme Court recently reiterated the teachings of *Payton* in *Kirk v. Louisiana*, 536 U.S. 635, 122 S.Ct. 2458, 153 L.Ed.2d 599 (2002). There the Court held that as "*Payton* makes plain, *police officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home.*" 536 U.S. at 638, 122 S.Ct. 2458 (emphasis added).

*United States v. Flowers*, 336 F.3d 1222, 1226 (10th Cir.2003).

### Factual nexus

Defendant has the burden to show not only that the government violated his Fourth Amendment rights, but also that a factual nexus exists between any illegality and the challenged evidence. *See United States v. Nava–Ramirez*, 210 F.3d 1128, 1131 (10th Cir.), *cert. denied*, 531 U.S. 887, 121 S.Ct. 206, 148 L.Ed.2d 144 (2000). Defendant apparently seeks to meet this burden by showing that officers searched defendant's residence and seized items soon after his arrest and prior to issuance of the search warrant, through the testimony of Ms. Linda Clapper, defendant's girlfriend.

Ms. Clapper testified that she left defendant's residence at 7:30 or 8:00 p.m. on the night of defendant's arrest, at which time everything was clean and in its place.

---

1. Although the search warrant states that it was issued at 3:30 p.m., the parties agree that the correct time of its issuance was approximately 3:30 a.m. on January 16.

2. Neither does the government concede that exigent circumstances were not present. *See* testimony of Lieutenant Joe Garman.

When she returned to defendant's residence shortly after 11:00 p.m. that night, she opened the back door and saw "everything in disarray" in the residence. Officers prevented her from leaving the laundry room on the back porch, which was also in disarray, but she could see items from the kitchen cupboards strewn about the kitchen on the table, floor and counters, and the cupboard doors were wide open. She testified that she saw six or eight officers, one of whom was Lt. Joe Garman, in the residence at that time, and that they refused to let her get a coat or take anything from the residence.

Ms. Clapper additionally admitted that she is currently defendant's girlfriend, does not want to see him get in trouble, and has a conviction for use of methamphetamine in the past, but no longer uses that substance.

Law enforcement officers testified that at 11:00 p.m., Officers Jeremy Watkins and Officer Robinson entered defendant's residence, approximately ten minutes after defendant's arrest. No other officers, including Lt. Joe Garman, were in the residence at the time. Officer Watkins' purpose for being in the residence was to do a security sweep to make sure that no one else was in the residence who could destroy evidence. Officer Watkins was aware that a search warrant was being sought, and testified that the two officers merely secured the residence and did not search it except to determine the presence of other persons. He stated that the officers did not take any items out of any cupboards. He and Officer Robinson remained in the residence approximately ten or fifteen minutes total, during which time no other officers were present. He testified that while the two officers were in the residence, Linda Clapper arrived at the back of the residence to get a child who was there. She remained on the back porch approximately five or ten minutes, then left. When Offi-

cers Watkins and Robinson left, one officer was stationed at the front door, and another at the back, until officers entered pursuant to the search warrant several hours later.

To the extent that Ms. Clapper's testimony contradicts that of the officers, the court finds the testimony of the officers to be more credible, as it is more objective, and is consistent among all witnesses except Ms. Clapper, who clearly has a personal interest in assisting the defendant.

Regardless of its credibility or lack thereof, the court does not find that Ms. Clapper's testimony is material to the prevailing issue. She admitted that she did not see any officer pulling items out of cupboards. She offered no testimony about the presence or absence of the counterfeit money or computer equipment which was seized at some point by officers. Further, her testimony fails to show that any mess created during her three hours' absence was the result of acts taken by any law enforcement officer. More specifically, her testimony does not raise a reasonable inference that officers' seized counterfeit money or computer equipment prior to execution of the search warrant. It would be equally reasonable to infer that any such mess was caused by defendant prior to his arrest, in the course of attempting to find the bug he believed police had placed in his residence. Thus even had the court credited the testimony of Ms. Clapper, it would find such testimony insufficient to show that officers seized the evidence in question soon after defendant's arrest or at any time prior to execution of the search warrant.

 The court finds that defendant has not met his burden to show a factual nexus between any illegality and the challenged evidence. The court finds that all evidence was obtained several hours after defendant's warrantless arrest, and was seized

pursuant to a search warrant whose validity is not challenged.

But even assuming that had defendant met his burden to show the requisite connection between the seizure of the evidence and any violation of his constitutional rights, the court would not grant defendant's motion to suppress, as an exception to the exclusionary rule permits its use.

"Under the 'fruit of the poisonous tree' doctrine, the exclusionary rule bars the admission of physical evidence and live witness testimony obtained directly or indirectly through the exploitation of police illegality." The Court, however, has recognized three exceptions to the exclusionary rule which permit the use of tainted evidence if the prosecution shows by a preponderance of the evidence that the evidence sought to be introduced was or could have been secured "by means sufficiently distinguishable to be purged of the primary taint." Evidence obtained in violation of the Fourth ... Amendment may be admitted if it: (1) has but an attenuated link to the underlying illegality; (2) derived from a source independent of the illegal conduct; or (3) would have been inevitably discovered absent the illegality. *United States v. Griffin,* 48 F.3d 1147, 1150 (10th Cir.1995) (internal citations omitted). The government relies upon the latter two exceptions.

**Independent source exception**

The independent source doctrine permits the introduction of "evidence initially discovered during, or as a consequence of, an unlawful search, but later obtained independently from activities untainted by the initial illegality." (Citations omitted). The ultimate inquiry is whether the alleged independent source is "in fact a genuinely independent source of the information and tangible evidence at issue." (Citations omitted.) ("The critical inquiry under the independent source doctrine is whether the challenged evidence was obtained from lawful sources and by lawful means independent of the police misconduct.").

*Griffin,* 48 F.3d at 1150.

■ The rationale for the rule is to put the police in the same position as, instead of a worse position than, they would have been in if no police misconduct had occurred.

"[T]he interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a worse, position that they would have been in if no police error or misconduct had occurred.... When the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation." *Nix v. Williams,* 467 U.S. 431, 443, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984).

*Murray v. United States,* 487 U.S. 533, 537, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988).

A subsequent search warrant can provide a sufficiently independent source, triggering application of this rule. *See Segura v. United States,* 468 U.S. 796, 813–814, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984). Here, Officer Hanus, who completed the search warrant affidavit, testified that although he knew of the fact of defendant's arrest, he was not at the scene of his arrest, and would have applied for the search warrant even if defendant had not been arrested. His decision to seek a warrant occurred at the moment officers decided to arrest defendant, and the record fails to reveal that he either entered defendant's residence or based his decision to seek a warrant on any information derived from officers who did enter. The

court has carefully reviewed search warrant affidavit, and finds that although it refers to the fact of defendant's arrest, it does not include any information gained by any law enforcement officer as a result of defendant's arrest or otherwise from the warrantless entry at the time of defendant's arrest.

■ Thus the prosecution has met its burden to show, by a preponderance of the evidence, that no information gained from the warrantless entry affected either the law enforcement officers' decision to seek a warrant or the magistrate's decision to grant it. Accordingly, the court finds the counterfeit bills and computer evidence are admissible under the independent source rule. Alternatively, the court finds, for the same reasons set forth above, that the evidence is admissible pursuant to the inevitable discovery rule. *See United States v. Tueller*, 349 F.3d 1239 (10th Cir.2003). Accordingly, defendant's motion to suppress evidence must be denied.

## MOTION TO COMPEL

Defendant moves the court to compel the government to provide certain information relating to the "informant," whom defendant knows to be Jim Vogt. Defendant alleges that Vogt told law enforcement agents that he had observed defendant making counterfeit ten dollar bills on his computer, but defendant asserts that the Secret Service agent who examined defendant's computer found no evidence that bills of that denomination had been made on it.

The affidavit in support of the search warrant states in relevant part:

> On January 15, 2002, Jim Vogt contacted the affiant. Jim advised that he was at Lewis Billing's residence last night, January 14, 2002. While Jim was present, he witnessed Lewis Billings cutting out ten dollar bills after Lewis made the money by copying a ten dollar bill on his computer system in his bedroom.

Gvmt. Exh. 2. Noting that the sentencing guidelines provide for a sentencing enhancement if defendant manufactured federal reserve notes, defendant contends that Mr. Vogt's testimony and lack of credibility are critical to the preparation of his defense.

Defendant seeks to compel the following information about the informant: his address; any prior record; any promised immunities or agreements or other evidence affecting the issues of bias or credibility, including evidence of psychiatric treatment, drug addiction, or drug use while working with law enforcement officers; any payments and other consideration made to the informant; any recorded memorandum of communication between the informant and government agents; the results of any polygraph examination taken by the informant; and the extent of his work in the investigation of other cases and any benefit received therein. Defendant additionally seeks to require the government to "make reasonable efforts to produce the informant as a witness at trial." Dk. 22, p. 2.

■■ In *Roviaro v. United States*, 353 U.S. 53, 59, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the Supreme Court recognized "the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." This privilege is "by no means absolute." *United States v. Brodie*, 871 F.2d 125, 128 (D.C.Cir.1989). Whether to disclose the identity of a confidential police informant is a determination that requires a court to balance the public interest in protecting the flow of information in a manner necessary for effective law enforcement against an individual's right to prepare his defense. *Roviaro*, 353 U.S. at

62, 77 S.Ct. 623. In determining whether disclosure is necessary, the court must consider the particular circumstances of the case, including the crime charged, the possible defenses, and the significance of the informer's testimony. *Id.* "When it is clear that the informant cannot aid the defense, the government's interest in keeping secret his identity must prevail over the defendant's asserted right of disclosure." *United States v. Martinez,* 979 F.2d 1424, 1429 (10th Cir.1992), *cert. denied,* 507 U.S. 1022, 113 S.Ct. 1824, 123 L.Ed.2d 454 (1993).

A defendant seeking disclosure has the burden of proof. *United States v. Sinclair,* 109 F.3d 1527, 1538 (10th Cir. 1997). The defendant must come forward with evidence establishing that the *Roviaro* criteria favor disclosure. *United States v. Blevins,* 960 F.2d 1252, 1258–59 (4th Cir.1992). Mere speculation about the usefulness of an informant's testimony is not sufficient to warrant disclosure. *United States v. Mendoza–Salgado,* 964 F.2d 993, 1001 (10th Cir.1992). " 'The defendant must explain to the court as precisely as possible what testimony he thinks the informer could give and how this testimony would be relevant to a material issue of guilt or innocence.' " *Blevins,* 960 F.2d at 1259 (quoting 2 Jack B. Weinstein & Margaret A. Berger, Weinstein's Evidence ¶ 510[06] (1991)); *see also United States v. Ridley,* 814 F.Supp. 992, 996 (D.Kan.1993).

The government states it has no intention of calling Vogt to testify at trial. The government adds that the Secret Service Agent's examination of defendant's computer did not rule out the possibility that defendant had in fact used it to manufacture federal reserve notes. Instead, the agent indicated that such computer files could have been overwritten or deleted, and that copies of the ten dollar bills could have been made on the scanner possessed by defendant without the use of the computer. Further, the agent found images of three counterfeit $20.00 bills on the defendant's computer, and found 35 counterfeit $10.00 bills in defendant's residence during the search pursuant to warrant.

Given the government's binding representation that it will not call the informant as a witness at trial, and the fact that the agent's testimony is not particularly helpful to the defendant, the court finds that defendant has not met his burden to establish that the *Roviaro* criteria favor disclosure. Accordingly, the motion to compel is denied.

IT IS THEREFORE ORDERED that defendant's motion to suppress (Dk.23) is denied.

IT IS FURTHER ORDERED that defendant's motion to compel (Dk.22) is denied.