Willie COFIELD, et al., Plaintiffs,

v.

CITY OF LaGRANGE, GEORGIA,
et al., Defendants.

Misc. A. No. 95–179 (JHG).

United States District Court,
District of Columbia.

Jan. 24, 1996.

John A. Buchman, Washington, DC, Jeffrey M. Todd, Lewis, Taylor & Todd, P.C., LaGrange, GA, for City of LaGrange, Georgia.

Donna M. Murphy, U.S. Department of Justice, Civil Rights Division, Washington, DC, for U.S., on behalf of Elizabeth Johnson, Acting Chief of the Voting Section, DOJ.

### MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

Presently pending is a motion by the United States to quash a subpoena issued on behalf of the defendant City of LaGrange, Georgia, which seeks "[e]ach and every document contained within the Section 5 Files maintained by the Justice Department, Justice Department File Number 93–1248 . . .

and Justice Department File Number 94–2267." Subpoena of April 24, 1995, Attachment A to Memorandum of the United States, On Behalf of Elizabeth Johnson, Acting Chief of the Voting Section, In Support of Motion to Quash Subpoena ("Motion to Quash").

In response to the defendants' subpoena arising out of litigation to which the United States is not a party, the United States produced certain documents, but withheld other documents and portions of documents, for which it claimed privilege. The United States now seeks to quash the subpoena. Upon order of this Court, the United States has submitted for *in camera* review those documents and portions of documents, for which it claims privilege. Each of those documents has been examined closely by this Court in connection with both the privilege claimed and the opposition thereto. For the reasons stated below, the motion to quash is granted in part and denied in part; the scope of the subpoena will be modified.

## I. Background

The defendants' subpoena arises from litigation pending in the Northern District of Georgia, *Cofield, et al., v. City of LaGrange, Georgia, et al.,* No. 3:93–CV–97–JTC, which is an action by private plaintiffs to enforce their rights, *inter alia,* under the Voting Rights Act of 1965, as amended and as codified at 42 U.S.C. §§ 1971–1974 (1988 & Supp. V. 1993). The United States is not a party to the *Cofield* litigation in which the plaintiffs contend that the use of at-large elections for the LaGrange City Council violates Section 2 of the Voting Rights Act of 1965, 42 U.S.C. § 1973.[1]

Although the United States is not a name party in the *Cofield* litigation, the United States, through the Department of Justice, has been actively involved in voting rights matters with the defendants, particularly in regard to the at-large method of election for City Council members. The City of LaGrange is subject to Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c, which requires preclearance by the Attorney General of any changes to "any voting qualification or prerequisite to voting, or standard, practice, or procedure." 42 U.S.C. § 1973c; *see South Carolina v. Katzenbach,* 383 U.S. 301, 86 S.Ct. 803, 15 L.Ed.2d 769 (1966); *see also Allen v. State Board of Elections,* 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969). *See generally* Armand Derfner, *Racial Discrimination and the Right to Vote,* 26 Vand.L.Rev. 523, 576 (1973). Twice in the past two years, the defendants have sought preclearance for substantial changes to the at-large election system for the LaGrange City Council, and twice the Attorney General has objected to the proposed changes. On both occasions, the Attorney General concluded "that the City had not met its burden under Section 5 of showing the absence of discriminatory purpose and effect." Motion to Quash, *supra,* at 2.

In connection with its preclearance submissions, the defendants have sought access to the relevant Section 5 files maintained by the Department of Justice in accordance with 28 C.F.R. § 51.50 (1995).[2] While the Department of Justice provided the defendants with access to the Section 5 files,[3] the defendants

---

**1.** 42 U.S.C. § 1973(a) provides:

No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizens of the United States to vote on account of race or color, or in contravention of the guarantees set forth in section 1973b(f)(2) of this title, as provided in subsection (b) of this section.

**2.** 28 C.F.R. § 51.50(a) provides:

Section 5 files: The Attorney General shall maintain a section 5 file for each submission, containing the submission, related written ma-

terials, correspondence, memoranda, investigative reports, data provided on magnetic media, notations concerning conferences with the submitting authority or any interested individual or group and copies of letters from the Attorney General concerning the submission.

**3.** In their supporting memoranda, the parties have expended considerable resources pointing fingers at each other for failing to communicate, return phone calls, or otherwise communicate regarding access to the Section 5 files. *See* Response of Defendants to Motion of the United States to Quash ("Defendants' Response"), at 6–9. These communications, or lack thereof, are not relevant to the motion to quash presently before this Court.

were not allowed to inspect or copy all of the documents, because the Attorney General had determined that certain documents were exempt from inspection under 28 C.F.R. § 51.50(d).[4] *See* Motion to Quash, *supra,* at 3. The subpoena followed on April 24, 1995, and directed the production of "[e]ach and every document contained within the Section 5 Files maintained by the Justice Department, Justice Department File Number 93–1248 (Act Number 57, City of LaGrange) and Justice Department File Number 94–2267 (Act Number 652, City of LaGrange) as such files are maintained and contain the information required to be included within said file by 28 C.F.R. § 51.50(a), to include, but not limited to, the submission itself, related written materials, correspondence, memoranda, investigative reports, data provided on magnetic media, notations concerning conferences with the submitting authority or any interested individual or group and copies of letters from the Attorney General concerning the submission." Exhibit A to Subpoena of

4. 28 C.F.R. § 51.50(d), in relevant part, provides:

Materials that are exempt from inspection under the Freedom of Information Act, 5 U.S.C. § 552(b), may be withheld at the discretion of the Attorney Gereral (sic). Communications from individuals who have requested confidentiality or with respect to whom the Attorney General has determined that confidentiality is appropriate under § 51.29(d) shall be available only as provided by § 51.29(d).

28 C.F.R. § 51.29(d) provides:

Department of Justice officials and employees shall comply with the request of any individual that his or her identity not be disclosed to any person outside the Department, to the extent permitted by the Freedom of Information Act, 5 U.S.C. § 552. In addition, whenever it appears to the Attorney General that disclosure of the identity of any individual who provided information regarding a change affecting voting "would constitute a clearly unwarranted invasion of personal privacy" under 5 U.S.C. § 552(b)(6), the identity of the individual shall not be disclosed to any person outside the Department.

5. Rule 45(c)(3)(A), in relevant part, provides:

On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena 'if it ... (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies....

6. In its Motion to Quash, *supra,* and in its Notice of Filing *Vaughn* Index in support of its Motion

April 24, 1995, Attachment A to Motion to Quash, *supra.*

## II. Discussion

In its motion, the United States asserts that it "has made available or provided to the City of LaGrange all documents sought by the subpoena that are not privileged." Motion to Quash, *supra,* at 4, ¶ 5. Under Fed. R.Civ.P. 45(c)(3)(A)(iii),[5] the United States claims that "the remaining documents sought by the subpoena either set forth the impressions, analysis and recommendation of staff members of the Civil Rights Division or would reveal the identity of confidential sources." Motion to Quash, *supra,* at 7; *see also* Reply Memorandum of the United States in Support of Motion to Quash Subpoena ("Reply"), *passim.* Additionally, the United States argues that the documents sought, which relate to the Attorney General's decisionmaking process under Section 5, are not relevant to the *Cofield* litigation which involves a Section 2 challenge. Motion to Quash, *supra,* at 16; Reply, *supra,* at 2 n. 1 & 8–9 n. 7.[6]

to Quash, *supra,* the United States suggests that the attorney work-product privilege also protects certain documents sought by the defendants. However, although the United States has raised this issue by suggestion, the applicability of this privilege was not briefed by either side.

The work product doctrine generally protects materials prepared by an attorney acting for a client in anticipation of litigation. *Hickman v. Taylor,* 329 U.S. 495, 510–12, 67 S.Ct. 385, 393–94, 91 L.Ed. 451 (1947); *see also* Fed.R.Civ.P. 26(b)(3). Since the Attorney General's Section 5 decisions are not subject to judicial review, *see* Motion to Quash, *supra,* at 16–17 (citing cases), it is difficult for the Court to understand how the protections offered by this privilege would apply in this case. Section 5 documents are prepared to assist the Attorney General in making an unreviewable decision; a challenge to Section 5 decisions through litigation is therefore not an option and, consequently, it does not appear that the Section 5 documents were prepared in anticipation of litigation. The United States appears to want to have it both ways: although it claims that the documents are not relevant to the Section 2 *Cofield* litigation because the documents form the basis of an unreviewable decision under Section 5, *see, e.g.,* Motion to Quash, *supra,* at 16–17, the United States suggests that the documents were nevertheless prepared in anticipation of the *Cofield* litigation and are therefore protected by the work-product doctrine. These arguments appear to be inconsistent. However, while mentioned, this claim of privilege was nev-

The defendants agree with the United States' statement of the law of privilege, but challenge its application in this case. *See* Defendants' Response, *supra*, at 9. The defendants contend that the deliberative process privilege is inapplicable to Section 5 decisions, because those decisions are unreviewable in nature. *Id.* at 11 & 15. Even if the privilege applies, the defendants argue that it does not protect purely factual material. *Id.* at 10–11. The defendants have requested *in camera* review, arguing that they are unable to challenge the basis for withholding documents that they cannot see. *Id.* at 12. With regard to the confidential informant's privilege, the defendants make a more sweeping argument: "Complete production should be ordered as [the Department of Justice] has not met its burden in proving that confidentiality is appropriate under the Freedom of Information Act." *Id.* at 13–14.

After ordering the United States to submit the challenged documents for the Court's *in camera* review, the Court has examined each document and applied the law of relevance and privilege, as discussed below.

*A. Relevance.*

■ A federal court has the authority to quash a subpoena that seeks material which is clearly irrelevant 9A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure: Civil 2d § 2459, at 42 (1995). By incorporating reference to Fed.R.Civ.P. 26(b),[7] Rule 45(d)(1) applies an "exceedingly broad" standard of relevancy to a subpoena seeking material from a non-party. *See* Advisory Committee Notes to Subdivision (d) of Rule 45 of 1991 Amendments; 9A Wright & Miller, *supra*, § 2459, at 42. The relevancy threshold is not high: material sought need not be admissible at trial, but must be relevant to the subject matter of the litigation and reasonably calculated to lead to admissi-

ble evidence. *See* 9A Wright & Miller, *supra*, § 2459, at 45; *see also* 8 Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure: Civil 2d § 2008, at 101 & n. 7 (1994) ("The proposition stated in the text is now so well settled that the cases cited are only illustrative of many others.")

■ In *Cofield*, the defendants are being sued by private plaintiffs who, according to the United States, claim that the City's use of an at-large method of election is in violation of Section 2 of the Voting Rights Act of 1965. Motion to Quash, *supra*, at 2, ¶ 1. Presumably, the plaintiffs will be attempting to prove that the present system denies or abridges their right to vote under 42 U.S.C. § 1973. In contrast, the defendants' Section 5 submissions sought preclearance to change the same at-large method of election which the plaintiffs are now challenging. Defendants' Response, *supra*, at 5–6. The Attorney General objected to the defendants' submissions based, at least in part, on the process that led to the proposed method of election and because the proposals were not shown to be free of discriminatory purpose.

While Section 5 decisions turn upon a variety of factors, which are part factual and part interpretive in nature, it requires no stretch of the imagination to conclude that both the Section 2 litigation and the Section 5 decisionmaking process involve common matters. In this instance, both involve facts and interpretations of facts concerning voting patterns, electoral data and may even include evidence of intentional discrimination by the City of LaGrange. The information in the Section 5 files may reasonably lead to admissible evidence at a Section 2 trial because both the files and the pending litigation involve analysis of the present at-large method

---

er actually briefed. Accordingly, the United States' suggestion of attorney work-product privilege, applicable to material requested from a non-party, will not be considered by this Court.

7. Fed.R.Civ.P. 26(b), relevant part, provides:

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the

party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

of election and proposed changes. The test of relevance in discovery is not a stringent one. Additionally, the Court finds it significant that the rules applicable to the disclosure of information in Section 5 files, 28 C.F.R. §§ 51.29 & 51.50, do not establish relevance as a prerequisite to disclosure.

In connection with litigation involving its present method of election for city council members, information compiled to evaluate the effects of proposed changes may not be admissible at trial; however, the underlying factual data may be admissible and, even if it would not be, it may reasonably lead to evidence that is. The material sought is not clearly irrelevant and it may not be withheld by the United States on this basis.

### B. Privilege

Access to the Section 5 files is governed by 28 C.F.R. § 51.50, which incorporates the exemptions of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(b). *See* 28 C.F.R. § 51.50(d) (materials may be exempt from inspection under FOIA); *id.* § 51.29(d) (exempting disclosure of an informant's identity based upon either individual request or "whenever it appears to the Attorney General that disclosure ... 'would constitute a clearly unwarranted invasion of personal privacy' under 5 U.S.C. § 552(b)(6)"). Thus, the material that the defendants seek may be exempt from disclosure if protected under FOIA's deliberative process exemption, *see* 5 U.S.C. § 552(b)(5), under the personal privacy exemption, *see* 5 U.S.C. § 552(b)(6),[8] under the law enforcement exemption, *see* 5 U.S.C. § 552(b)(7), or under the federal common law informer's privilege, *see Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957); *e.g., Holman v. Cayce*, 873 F.2d 944, 946 (6th Cir.1989).

#### 1. Deliberative Process.

 The deliberative process privilege, which is well established in the law, is intended to "prevent injury to the quality of agency decisions." *National Labor Relations Board v. Sears, Roebuck & Co.*, 421 U.S. 132, 151, 95 S.Ct. 1504, 1516, 44 L.Ed.2d 29 (1975).

The principal policy bases underlying this privilege are to encourage open, frank discussions within the agency, to protect against premature disclosure of proposed policies and to avoid public confusion that might arise from disclosing internal memoranda or other information that did not form the basis for a final agency decision. *See, e.g., Russell v. Department of the Air Force*, 682 F.2d 1045, 1048 (D.C.Cir.1982). To avoid chilling the decisionmaking process, this privilege protects documents because the deliberative process itself would be harmed by disclosure. *Dudman Communications v. Department of the Air Force*, 815 F.2d 1565, 1568 (D.C.Cir. 1987) ("Congress enacted Exemption 5 to protect the executive's deliberative processes—not to protect specific materials."). To establish that a document falls within the scope of this privilege, the agency bears the burden of showing that the document is both predecisional in nature, *Jordan v. Department of Justice*, 591 F.2d 753, 774 (D.C.Cir. 1978), and deliberative—"a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Vaughn v. Rosen*, 523 F.2d 1136, 1143–44 (D.C.Cir.1975); *see also Quarles v. Department of the Navy*, 893 F.2d 390, 392 (D.C.Cir.1990).

` ` The scope of the deliberative process privilege is limited to deliberative materials, and it does not apply to "pure facts." *Montrose Chemical Corp. v. Train*, 491 F.2d 63, 66 (D.C.Cir.1974). However, even purely factual material is exempt from disclosure if its release would expose the agency's deliberative process. *See Dudman*, 815 F.2d at 1568. If the act of compiling information, such as separating significant facts from those that are insignificant, would require the exercise of judgment by agency personnel, the facts are privileged under the deliberative process privilege and exempt from disclosure under FOIA exemption b(5). *See Montrose Chemical Corp.*, 491 F.2d at 71; *see also Mapother v. Department of Justice*, 3 F.3d 1533, 1538–40 (D.C.Cir.1993); *Providence Journal Co. v. Department of the Army*, 981 F.2d 552, 562 (1st Cir.1992);

---

**8.** Although available to it, the United States has not asserted or briefed FOIA exemption b(6) as a basis for withholding in this case. The Court does not, therefore, reach this issue.

*Mead Data Central, Inc., v. Department of the Air Force,* 566 F.2d 242, 256 (D.C.Cir. 1977). Moreover, where the factual information is inextricably connected to the deliberative material such that its disclosure would reveal, and harm, the deliberative process, the factual material itself is protected. *Ryan v. Department of Justice,* 617 F.2d 781, 790 (D.C.Cir.1980); *Wolfe v. Department of Health and Human Services,* 839 F.2d 768, 774–76 (D.C.Cir.1988).

 In this Circuit, a functional test applies: whether the information is protected turns on "whether the agency has plausibly demonstrated the involvement of a policy judgment in the decisional process relevant to the requested documents." *Petroleum Inf. Corp. v. Department of the Interior,* 976 F.2d 1429, 1435 (D.C.Cir.1992). Moreover, this Circuit has recognized that if a document is deliberative in nature, the identity of the author is also privileged, because of the potential chilling effect and harm to the deliberative process. *Brinton v. Department of State,* 636 F.2d 600, 604 (D.C.Cir.1980), *cert. denied,* 452 U.S. 905, 101 S.Ct. 3030, 69 L.Ed.2d 405 (1981). This reasoning applies equally to internal routing notations that identify agency personnel involved in the deliberative process even where such notations are on copies of documents, the originals of which have been released (sans notation).

The United States has asserted this privilege "with respect to internal Departmental memoranda and notes used in the decision-making process. These documents clearly are predecisional, and they contain the analyses and recommendations of Department of Justice staff that underlie the ultimate decision to interpose an objection or to preclear a voting change." Motion to Quash, *supra,* at 9–10. Additionally, the United States "has withheld several maps (and accompanying demographic data) that reflect manipulation and analysis of the facts by Civil Rights Division personnel, as well as several unsigned copies of Section 5 determination letters that bear notations concerning the internal deliberative process." *Id.* at 10 n. 7. In its Reply, the United States avers that "[w]hile the memoranda [sought by the defendants] do discuss the facts of the submis-

sion, all of the underlying factual information is found elsewhere in the file and has been provided to the City." Reply, *supra,* at 3. Noting that the electoral data which the City seeks was first provided by the City itself, *id.* at 3 n. 4, the United States contends that what the City really seeks are not the facts but "what advice as to importance and unimportance of the facts the [decision maker] received, and how much of it he accepted." *Id.* at 4 (quoting *Montrose Chem. Corp.,* 491 F.2d at 70).

In opposition to the Motion to Quash, the defendants make two principal arguments for disclosure. First, while citing no legal authority, the defendants argue that the deliberative process privilege should not apply to Section 5 determinations, because the Attorney General's decisions under Section 5 are not subject to judicial review. *See* Defendants' Response, *supra,* at 11. Second, the defendants argue that the United States is improperly withholding documents that are factual in nature. *See id.* at 11–12.

 In arguing that the deliberative process privilege does not apply because the Attorney General's decisions are not subject to judicial challenge, the defendants fail to cite to any legal support. Their omission is for good reason: the argument is wholly without merit. This argument is best characterized as what the defendants would like the law to be, not what it is. The deliberative process privilege protects the agency's deliberative process by exempting from disclosure documents that would expose and harm that process. The pendency of litigation is not a prerequisite for an agency to invoke the protections of the deliberative process privilege, because litigation is not the only harm that threatens the integrity of an agency's deliberative process. The defendants' argument is flatly rejected.

 With respect to the application of the deliberative process privilege, the Court has examined those documents for which the United States has asserted the privilege and upholds its assertion. Documents 1–18 and 20–26 in the United States' *Vaughn* Index are predecisional and deliberative in nature. Where factual material is included in those

documents, it could not be produced without harming the agency's deliberative process. Moreover, those documents with internal routing notations are within the scope of the privilege, because such notations may reasonably lead to identification of those individuals involved. in the decisionmaking process, a result that could chill open and frank discussions within the agency, undermining the deliberative process. ·

## 2. Confidentiality

The United States asserts multiple bases for withholding the confidential informants' identities: 28 C.F.R. § 50.29(d), exemption (b)(7)(D) of FOIA, and the informer's privilege under the federal common law. Each basis will be described separately and then applied to the documents at issue.

■■■ Under regulations promulgated by the Department of Justice, "officials and employees shall comply with the request of an individual that his or her identity not be disclosed, to the extent permitted by the FOIA." 28 C.F.R. § 51.29(d). Even without a request, however, "whenever it appears to the Attorney General that disclosure of the identity of an individual who provided information regarding a change affecting voting 'would constitute a clearly unwarranted invasion of personal privacy' under 5 U.S.C. § 552(b)(6), the identity of the individual shall not be disclosed." *Id. See generally Ripskis v. Department of Housing and Urban Development,* 746 F.2d 1, 3 (D.C.Cir. 1994) (applying exemption (b)(6)). The general purpose of this regulation is to encourage persons to provide sensitive information relevant to Section 5 determinations by protecting their identities through anonymity when they so request. *See, e.g., Johnson v. Miller,* 864 F.Supp. 1354, 1367 (S.D.Ga.1994), *aff'd on other grounds and remanded,* —— U.S. ——, 115 S.Ct. 2475, 132 L.Ed.2d 762 (1995) (affirming the three judge panel's finding).

First, the United States asserts that 28 C.F.R. § 50.29(d) exempts it from disclosing certain documents to the defendants. However, the United States has neither offered evidence that any of the sources requested anonymity nor has it claimed exemption (b)(6) protection, offering a balancing of the public interests and privacy interests under 5 U.S.C. § 552(b)(6). *See, e.g., Holy Spirit Ass'n for Unification, etc. v. Federal Bureau of Investigation,* 683 F.2d 562, 564–65 (D.C.Cir.1982). Although section 50.29(d) could have been an adequate basis for withholding in this case, the United States has not met its burden of producing sufficient evidence to trigger application of the broad confidentiality protections of this section. Nor has it argued that the Attorney General has conducted a balancing sufficient to trigger the protection of exemption (b)(6).

■■■ The United States next relies upon FOIA exemption 7(D) as a basis for withholding, citing the confidentiality and privacy privilege. *See* Motion to Quash, *supra,* at 14; *Vaughn* Index, *supra, passim.* In relevant part, the (b)(7)(D) exemption allows for withholding "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information ... could reasonably be expected to disclose the identity of a confidential source, including a State, local, or foreign agency or authority or any private institution which furnished information on a confidential basis." 5 U.S.C. § 552(b)(7)(D).[9] *See Williams v. Federal Bureau of Investigation,* 69 F.3d 1155, 1158 (D.C.Cir.1995). The government bears the burden to establish that the exemption applies, 5 U.S.C. § 552(a)(4)(B), but if it does apply, in contrast to exemptions 6 & 7(C), there is no balancing of public and private interests. *McDonnell v. United States,* 4 F.3d 1227, 1257 (3rd Cir.1993).

■■■ Whether the broad protections of exemption (b)(7)(D) apply turns on whether the information was furnished by a confiden-

9. While the second clause of exemption (b)(7)(D) protects information provided by a confidential source compiled in the course of an investigation, the first clause protects the identity of the source. In this case, only the first clause applies, because although the information was compiled for law enforcement purposes, it was not compiled in the course of a criminal investigation or by an agency conducting a lawful national security investigation.

tial source during a law enforcement investigation. *See Simon v. Department of Justice*, 980 F.2d 782, 784 (D.C.Cir.1992). A source is considered confidential if that source " 'provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred.' " *United States Department of Justice v. Landano*, 508 U.S. 165, 172, 113 S.Ct. 2014, 2019, 124 L.Ed.2d 84 (1993) (quoting S.Rep. No. 93–1200, p. 13 (1974)). The government is not entitled to a presumption that the sources who provide information during a law enforcement investigation are confidential sources under FOIA exemption 7(D). *Id.* at 172–79, 113 S.Ct. at 2019–23; *see also Williams*, 69 F.3d at 1158.

 The threshold requirement for applying exemption 7(D) is whether the information was created or compiled for law enforcement purposes. *Simon*, 980 F.2d at 783; *Pratt v. Webster*, 673 F.2d 408, 420–21 (D.C.Cir.1982). There is no requirement that the information be collected because of an alleged violation of federal law, but only that it be compiled for a "federally *authorized* [law enforcement] purpose." *Keys v. United States Department of Justice*, 830 F.2d 337, 342 (D.C.Cir.1987) (quoting *Bevis v. Department of State*, 801 F.2d 1386, 1388 (D.C.Cir.1986), and adding emphasis). It is facially apparent that the Department of Justice must compile information like that reflected in the *Vaughn* Index in order to perform its statutory obligations to enforce and administer Section 5 of the Voting Rights Act, as amended. The defendants have not contended otherwise, and they have offered no evidence to refute the nexus between collection of the information and its use. *See Keys*, 830 F.2d at 340. Consequently, the Court holds that the information, for which the United States claims exemption 7 protection, was compiled for the purpose of law enforcement. *See, e.g., Birch v. United States Postal Serv.*, 803 F.2d 1206, 1210–11 (D.C.Cir.1986) (law enforcement

purpose satisfied because use of mails falls within statutory authority of agency).

 To trigger exemption 7(D)'s protection of the identity of a source, the United States must next establish that the information was in fact provided by a confidential source. This can be done in one of two ways: a source will be confidential if the source " 'provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred.' " *Landano*, 508 U.S. at 172, 113 S.Ct. at 2019. In its Motion to Quash, its Reply and its *Vaughn* Index, the United States has not directly stated or offered evidence that the sources were provided express assurances of confidentiality.[10] In its Motion to Quash, the government merely states that the sources had "an expectation that their identities would remain confidential." Motion to Quash, *supra*, at 12. While the government is not entitled to a presumption of confidentiality, generic circumstances may exist from which a court can find an implied assurance of confidentiality. *Landano*, 508 U.S. at 178–79, 113 S.Ct. at 2023. In essence, a source may be considered confidential within the meaning of exemption 7(D) if the informant's relation to the circumstances at issue supports an inference of confidentiality. *Id.*, at 178–79, 113 S.Ct. at 2023 (citing favorably the approach adopted by the U.S. Court of Appeals for the D.C. Circuit in *Keys*, 830 F.2d at 345–46); *see also Computer Professionals for Social Responsibility v. United States Secret Service*, 72 F.3d 897, 905–06 (D.C.Cir.1996).

 To meet its statutory obligations, Voting Rights staff of the Department of Justice contact individuals in local communities to collect information regarding proposed changes to voting methods, the basis for the proposals and the anticipated effects if implemented. *See* Motion to Quash, *supra*, at 12–13. The inquiries are often directed to individuals who are closely associated with decision makers in local or state government

**10.** The Motion to Quash implies that express assurances of confidentiality were provided, however, because it states that one individual waived confidentiality. *See* Motion to Quash,

*supra*, at 16. The Court will not imply express assurances from ambiguous statements in the government's pleadings.

and whose livelihoods or personal safety might be in jeopardy if their contact with the Department of Justice was disclosed. The sensitive issue of race relations is central to the Voting Right staff's inquiries and, as reflected in the documents offered in the *Vaughn* Index, race is often the key underlying component. It requires no analytical gymnastics to conclude that the potential for reprisal is significant against those persons who provide sensitive information, which is often of a racial nature, regarding proposed changes to a method of election in a city subject to Section 5 of the Voting Rights Act, as amended. The history of the civil rights movement is replete with examples of retaliation against African–Americans who have attempted to assert their right to vote, *see, e.g., United States v. Bruce,* 353 F.2d 474 (5th Cir.1965); *United States v. Wood,* 295 F.2d 772 (5th Cir.), *cert. denied,* 369 U.S. 850, 82 S.Ct. 933, 8 L.Ed.2d 9 (1962); *see also Regents of University of California v. Bakke,* 438 U.S. 265, 335, 98 S.Ct. 2733, 2771, 57 L.Ed.2d 750 (1978) (Brennan, J., concurring in the judgment in part and dissenting in part) (quoting Sen. Humphrey), and of reprisal against persons who have demonstrated for the right to vote or who have cooperated with the Department of Justice in its attempts to eradicate racism in southern voting systems. *See generally* Taylor Branch, Parting the Waters—America in the King Years, 1954–63, at 478–88, 495–504, 507–15, 619–20, 636–40, 712–17 & 720–25 (1988).

Upon examining the material submitted for *in camera* review, the Court concludes that the relation of the sources to the circumstances at issue supports an implied assurance of confidentiality. The identities of the confidential sources and all information which might reasonably be found to lead to disclosure of such identity may be withheld. *See Birch,* 803 F.2d at 1212; *Pollard v. Federal Bureau of Investigation,* 705 F.2d 1151, 1155 (9th Cir.1983). However, information that does not reveal the source's identity is not protected by exemption 7(D) unless, under the second clause of exemption 7(D), such information was compiled in the course of a criminal or national security investigation. In this case, the second clause is inapplicable—only information that would reasonably lead to the disclosure of the source's identity may be withheld.

▮▮▮▮ Finally, the United States relies upon the common law of the informer's privilege as recognized by the Supreme Court in *Roviaro v. United States,* 353 U.S. 53, 59–61, 77 S.Ct. 623, 627–28, 1 L.Ed.2d 639 (1957). Under this qualified privilege, the government may withhold the identity of an informer who furnishes information to the government. *Roviaro,* 353 U.S. at 59, 77 S.Ct. at 627. This privilege is applicable to both criminal, *e.g., McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967); *United States v. Green,* 670 F.2d 1148, 1154 (D.C.Cir.1981), and civil matters, *e.g., Hodgson v. Charles Martin Inspectors of Petroleum, Inc.,* 459 F.2d 303, 305 (5th Cir.1972); *Westinghouse Elec. Corp. v. City of Burlington,* 351 F.2d 762, 767 (D.C.Cir.1965). However, the privilege is not absolute and must yield based upon a showing that the identity of the informer is essential to the requester's case. *Roviaro,* 353 U.S. at 60, 77 S.Ct. at 627–28; *United States v. Brodie,* 871 F.2d 125, 127–28 (D.C.Cir.1989).

▮▮▮ Upon balancing the public interest with the defendants' interest, it is clear that in this case the privilege protecting the informers' identities withstands the defendants' attack. While disclosure of their identities would create the potential for retaliation against the confidential informants, *see supra,* the defendants' claim to need disclosure in order to identify potential witnesses for trial is, at best, weak. *See* Defendants' Response, *supra,* at 13 ("[T]he applicable Section 5 files *could* very well identify potential witnesses whose testimony *could* be integral in litigating the Section 2 issues before the Northern District of Georgia.") (emphasis added). The defendants have not shown that disclosure of the informant's identity is essential to the preparation of their case, because alternate means exist to identify potential witnesses for trial. Accepting that their motive is to identify witnesses for trial, the defendants have only shown that disclosure of the confidential informants' identities would be more convenient for them and would assist them in their trial preparations.

On the other hand, disclosure of the informer's identities would undermine substantially the Department of Justice's ability to administer the Section 5 program. In sum, the defendants have failed to make the showing necessary to tilt the *Roviaro* balance towards disclosure of the informants' identities.

 The government has nevertheless stretched the informer's privilege to reach beyond that information which would reasonably identify the informer, and it argues that the privilege includes all information provided by the confidential informer. *See* Motion to Quash, *supra,* at 14 ("informer's privilege ... allows the government to withhold information where its interests in confidentiality outweigh any countervailing interests in disclosure"). The government's reliance upon *Roviaro* as general support for this proposition is misplaced. In fact, *Roviaro* better supports the view that the privilege applies only to the informer's identity: "where disclosure of the contents would not tend to reveal the identity of any informer, the contents are not privileged." 353 U.S. at 60, 77 S.Ct. at 627. While there is a split of authority on whether information unrelated to the informer's identity is protected under this privilege, *see* 26A Charles A. Wright & Kenneth W. Graham, Federal Practice and Procedure: Evidence § 5704, at 379–80 (1992), the law in this Circuit has been clear for over thirty years and it does not support the government's expansive interpretation.

In *Westinghouse Electric Corp. v. City of Burlington, Vermont,* 351 F.2d 762 (D.C.Cir. 1965), the Department of Justice, a non-party in the underlying litigation, was served with a subpoena to produce documents relevant to antitrust litigation between private litigants. As in this case, the Department of Justice moved to quash the subpoena based, in part, on the informer's privilege. Rejecting the government's expansive interpretation, the Court of Appeals held that the "identity of the informer, not the content of the communication, is privileged." 351 F.2d at 769. The Court construed *Roviaro* narrowly: "Only the identity of the informer is privileged. The content of the communication is not privileged unless it would tend to reveal the identity of the informer." *Id.* at 768. In

this Circuit, the informer's privilege ends where information unrelated to the informer's identity begins. The United States cannot rely upon the informer's privilege to withhold information that would not reasonably lead to the disclosure of the informer's identity.

The Court has examined those documents for which the United States has asserted a confidentiality privilege and upholds the assertion of such privilege for all documents except:

1. Document 29. This document was previously disclosed to the defendants except for one sentence, which was redacted. The information was provided by a source who waived confidentiality. The redacted information does not appear to be material protected by 28 C.F.R. § 50.29(d), FOIA exemption (b)(7)(D) or the common law informer's privilege;

2. Document 35. This document was previously disclosed to the defendants except for a series of redactions. The information was provided by a source whose identity is confidential. However, the third line in the "comments section" which was redacted, does not appear to be material protected by 28 C.F.R. § 50.29(d), FOIA exemption (b)(7)(D) or the common law informer's privilege; and

3. Document 42. This document was previously disclosed to the defendants except for two sentences, which were redacted. The information was provided by a source whose identity was not protected by the United States. The redacted information does not appear to be material protected by 28 C.F.R. § 50.29(d), FOIA exemption (b)(7)(D) or the common law informer's privilege.

### III. Conclusion

Accordingly, for the reasons explained above, it is

ORDERED that the motion to quash is granted in part and denied in part; the subpoena is modified to exclude from its scope documents 1–28, 30–34, and 36–41, and 43–45, as identified in the United States' *Vaughn* Index; and it is

FURTHER ORDERED that the United States shall, on or before February 14, 1996,

disclose the information described above in documents 29, 35 and 42, or show cause by this date by filing a memorandum why such information should not be disclosed.

IT IS SO ORDERED.