**R.C.O. REFORESTING, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 97–658C.

United States Court of Federal Claims.

Dec. 10, 1998.

---

Wesley R. Higbie, San Francisco, California, for plaintiff.

Deborah P. Samuel, Washington, D.C., with whom was Assistant Attorney General Frank W. Hunger, for defendant. James Andrews, Office of General Counsel, Department of Agriculture, of counsel.

## ORDER

MEROW, Judge.

This matter is before the court on plaintiff's motion to compel production of documents and defendant's motion for a protective order. For the reasons stated below, defendant's motion is granted. Plaintiff's motion is denied, but without prejudice to the right to renew the motion after further discovery and receipt of defendant's submissions required by paragraph 2 of the April 7, 1997 Pretrial Order.

## BACKGROUND

On April 16, 1997, RCO Reforesting ("RCO") entered into a contract with the United States Forest Service for tree-planting services on the Eagle Lake Ranger District of the Lassen National Forest, California. Under the terms of the contract, RCO was to plant tree seedlings provided by the Forest Service and the Forest Service was to pay RCO for trees properly planted.

Contract performance began in April 1997. In early May, Forest Service law enforcement officers began investigating reports that RCO was burying or hiding tree seedlings instead of planting them. On May 9, 1997, a team of agents and officers interviewed members of RCO's crews. During the interviews, seven RCO employees signed statements asserting that they were directed to bury trees by Roberto Ochoa, owner of RCO, or one of RCO's foremen.

Forest Service personnel subsequently surveyed the areas where RCO's crews had worked. According to the government, the survey revealed that RCO buried or destroyed approximately 163,000 of the 453,000 tree seedlings provided under the contract.

On May 14, 1997, the Forest Service Contracting Officer ("CO") terminated the contract for default. His decision was based largely on the results of the Forest Service's investigation into RCO's alleged tree burying.

The United States Attorney's Office for the Eastern District of California subsequently initiated a criminal investigation. During the investigation, one of RCO's employees who cooperated with the government expressed concern for his safety and the safety of his family if Mr. Ochoa learned that he was providing information to the government. Magarrell Dec. ¶ 16; Steensland Dec. ¶ 14.

On June 23, 1997, pursuant to the Contract Disputes Act, 41 U.S.C. §§ 601–612 (1994) ("CDA"), RCO submitted a certified claim to the CO for contract payments allegedly due. The claim also requested that the termination for default be converted into a termination for the government's convenience. The CO did not issue a final decision on the claim.

On September 30, 1997, RCO filed a complaint in this court alleging that the Forest Service breached the contract by: failing to provide RCO with timely notice that its performance was defective; failing to give RCO an opportunity to cure the defects prior to terminating the contract for default; failing to permit RCO to observe the inspections that formed the basis of the CO's termination decision; failing to provide RCO with the results of the Forest Service's inspections prior to termination; and outrageous conduct of Forest Service investigators, including the use of duress to obtain false statements from RCO's employees during the May 9, 1997 interviews. The complaint, as amended and supplemented on November 25, 1998, requests that the default termination be converted into a termination for convenience and that plaintiff be awarded $85,020 for tree planting services rendered prior to the termination, plus other damages to which RCO may be entitled, attorney fees, and costs.

On December 22, 1997, defendant filed a motion to stay proceedings pending a decision by the U.S. Attorney's Office whether to prosecute RCO. On March 3, 1998, defendant advised the court that a decision had been made not to prosecute. As a result, defendant's motion to stay was denied as moot.

On April 14, 1998, defendant filed its answer denying liability for breach of contract. Defendant also asserted counterclaims against RCO based on common law fraud, the anti-fraud provide of the CDA, 41 U.S.C. § 604, the False Claims Act, 31 U.S.C. §§ 3729–3731, and the Forfeiture of Fraudulent Claims Act, 28 U.S.C. § 2514.

On April 7, 1998, a Pretrial Order was entered establishing a schedule for the exchange of pretrial materials. The schedule essentially tracks the manner in which evidence will be presented at trial. Pursuant to paragraph 1, plaintiff is required to make the initial submission disclosing its complete case-in-chief. Next, under paragraph 2, defendant is required to submit its complete response as well as its entire case-in-chief with respect to the counterclaims. Finally,

pursuant to paragraph 3, plaintiff is required to submit its response to defendant's paragraph 2 submissions. As the pretrial exchanges are required to be complete, the Pretrial Order is intended to limit the need for extensive discovery. However, the Order makes clear that discovery, if needed, may be undertaken prior to each pretrial submission.

In order to prepare its paragraph 1 submissions, plaintiff served discovery requests upon defendant seeking information and documents relating to the default termination. In response, defendant produced a "Report of Investigation" containing the signed statements of RCO's employees asserting that Mr. Ochoa or an RCO foreman directed them to bury or hide trees. However, defendant redacted the names of the employees. In addition, defendant withheld an entire exhibit which would reveal the identity of an RCO employee who assisted the government in its investigation. Defendant asserted that the withheld information was protected by the investigatory files privilege and the informer's privilege.

The parties subsequently engaged in negotiations regarding the withheld information. Counsel for defendant offered to release the information to plaintiff's counsel subject to a protective order prohibiting him from revealing the information to his client. Plaintiff's counsel declined the offer on the ground that full disclosure was necessary to effectively prepare his client's case and to respond to defendant's counterclaims. However, plaintiff's counsel stated that he was agreeable to the form of the proposed protective order.

On July 13, 1998, plaintiff filed the subject motion to compel production of the withheld information pursuant to Rule 37(a)(2) of the Rules of the United States Court of Federal Claims ("RCFC"). In support, plaintiff asserts that the investigatory files and informer's privileges are inapplicable because the employees who provided statements to the Forest Service did not do so with an understanding that their identities would be kept confidential. Plaintiff also argues that, even if the privileges apply, full disclosure is appropriate because plaintiff's need for unrestricted access outweighs the government's interests in limited disclosure.

On September 2, 1998, defendant filed its opposition and motion for a protective order pursuant to RCFC 26(c). The proposed protective order essentially would restrict access to the withheld information to plaintiff's counsel and his assistants. In support of its motion, defendant asserts that the investigatory files and informer's privileges apply because the individuals whose names have been withheld provided information of possible legal violations to Forest Service law enforcement officers during an investigation. Defendant contends further that the informers' status as employees of RCO and the potential for reprisal justify an inference of confidentiality. Finally, defendant acknowledges that the privileges are qualified but contends that limited disclosure under the proposed protective order is warranted because it will: (1) protect RCO personnel who provided, or wish to provide, truthful information; (2) preserve the testimony that RCO's employees provided to the government; and (3) serve the public policy of encouraging others to cooperate in investigations of fraud against the government.

## DISCUSSION

 The investigatory files privilege protects investigatory files compiled for law enforcement purposes. *See Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1341–44 (D.C.Cir.1984); *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir.1991). The purpose of the privilege "is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *In re Department of Investigation*, 856 F.2d 481, 484 (2nd Cir.1988). Where, as here, the privilege is invoked to withhold portions of files which would reveal the identity of sources, the government must show that the sources "provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred." *Department of Justice v. Landano*, 508 U.S. 165, 172, 113 S.Ct. 2014, 124 L.Ed.2d 84

(1993) (citation omitted) (interpreting exemption 7(D) of the Freedom of Information Act, 5 U.S.C. § 552(b)(7)(D)); *see* 3 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 509.24[1], at 509–26 (2d ed.1998) (case law interpreting exemption 7 must be consulted to determine scope of investigatory files privilege in civil litigation); 26A Charles Alan Wright & Kenneth W. Graham, *Federal Practice and Procedure* § 5681, at 158–59 (1992) (exemption 7 marks "outer limits" of investigatory files privilege).

 "What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law." *Roviaro v. United States,* 353 U.S. 53, 59, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). The privilege "recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation." *Id.* at 59–60, 77 S.Ct. 623. Like the investigatory files privilege, the informer's privilege does not apply if the identity of the informant is not confidential. *See New York v. Cedar Park Concrete Corp.,* 130 F.R.D. 16, 22 (S.D.N.Y.1990). "This does not mean that there must be an express request for or promise of confidentiality, but only that the furnishing of information was done under circumstances that would suggest that the identity of the informer was intended to be kept secret." 26A Wright & Graham, *supra,* § 5705, at 384–85.

 Both the investigatory files privilege and the informer's privilege are qualified; protected information must be disclosed if a litigant's need for the information outweighs the public interest in nondisclosure. *See In re Sealed Case,* 856 F.2d 268, 272 (D.C.Cir. 1988) (investigatory files privilege); *Dole v. Local 1942, Int'l Bhd. of Elec. Workers, AFL–CIO,* 870 F.2d 368, 372–73 (7th Cir. 1989) (informer's privilege).

Plaintiff does not dispute that the statements of RCO's employees were obtained by the Forest Service for law enforcement purposes. However, plaintiff asserts that neither the investigatory files privilege nor the informer's privilege applies because the employees were not assured, either explicitly or implicitly, that their identities would be kept confidential.

 Plaintiff is correct that there is no evidence that the employees expressly requested or were expressly promised confidentiality. However, a source may be considered confidential "if the informant's relation to the circumstances at issue supports an inference of confidentiality." *Cofield v. LaGrange,* 913 F.Supp. 608, 618 (D.D.C.1996) (citing *Landano,* 508 U.S. at 178–79, 113 S.Ct. 2014). "[C]ourts may look to the risks an informant might face were her identity disclosed, such as retaliation, reprisal or harassment, in inferring confidentiality." *Massey v. FBI,* 3 F.3d 620, 623 (2nd Cir.1993). "An employee-informant's fear of employer retaliation can give rise to a justified expectation of confidentiality." *United Technologies v. NLRB,* 777 F.2d 90, 94 (2nd Cir.1985). In addition, "serious and damaging allegations of misconduct that could initiate criminal investigations or lead to other serious sanctions can reflect an implied assurance of confidentiality." *Ortiz v. DHHS,* 70 F.3d 729, 734 (2nd Cir.1995), *cert. denied,* 517 U.S. 1136, 116 S.Ct. 1422, 134 L.Ed.2d 546 (1996).

 In this case, the sources stated that Mr. Ochoa and RCO foremen ordered RCO's crews to bury or hide trees. These statements led to a criminal investigation and could, according to the allegations in defendant's counterclaims, result in forfeiture of RCO's claims as well as an assessment of damages and civil penalties for fraud. Furthermore, since the sources are employees of RCO, the potential for reprisal exists. One informer has already expressed concern for his safety and the safety of his family if Mr. Ochoa learns that he provided information to the government. Magarrell Dec. ¶ 16; Steensland Dec. ¶ 14. Based on the seriousness of their accusations and the potential for reprisal, it is reasonable to infer that the sources would not have provided signed statements to the Forest Service unless they understood that their identities would be

kept confidential. Therefore, the investigatory files privilege and the informer's privilege apply.

▮ Plaintiff next contends that even if the privileges apply, full disclosure is warranted because plaintiff's need for unrestricted access outweighs the government's interests in limited disclosure. In support, plaintiff asserts that the testimony of the informers will be central to defendant's counterclaims and that restricted use of the informers' names will hinder plaintiff's ability to respond.

At this stage of the litigation, however, it is concluded that the government's interest in protecting the informers from reprisal and its general interest in encouraging people with knowledge of possible crimes to come forward outweigh plaintiff's need for unrestricted use of the informers' names. *See* 3 Weinstein & Berger, *supra*, § 509.23[2], at 509–19 (in determining public interest in relation to disclosure of investigatory files, "consideration is generally given to the rationale that application of the privilege will encourage communications to enforcement agencies"); *Roviaro*, 353 U.S. at 59–60, 77 S.Ct. 623 (same rationale underlies informer's privilege). Pursuant to the Pretrial Order, plaintiff is currently required to prepare its paragraph 1 materials setting forth its entire case-in-chief. Although plaintiff's case includes the allegation that the Forest Service used duress to obtain false statements during the May 9, 1997 interviews, Compl. ¶¶ 25–35, 48–51, plaintiff apparently possesses evidence to support this allegation. *See* Pl.'s Mot. at 2, 5–6 (discussing Forest Service's alleged treatment of employees Martin Barajas, Elias Cisneros, and Manuel Ochoa); Pl.'s Reply Ex. A (declaration of Mr. Cisneros stating that he provided false statement to Forest Service under threat of imprisonment). Furthermore, to the extent plaintiff's counsel wishes to question other informers in an effort to obtain additional evidence, he may do so under the proposed protective

order. Hence, plaintiff does not need unrestricted use of the informers' names to set forth its full case-in-chief under paragraph 1 of the Pretrial Order.

Of course, plaintiff's need for unrestricted access could become acute if defendant intends to call the informers as witnesses at trial * or materially relies on their statements in its paragraph 2 submissions. For instance, as plaintiff correctly argues, if defendant intends to rely on the informers to prove that Mr. Ochoa ordered RCO's crews to bury trees (and this is a material issue in the case), plaintiff's counsel may need to reveal their identities to Mr. Ochoa to effectively respond.

At this stage, however, plaintiff's need for unrestricted use is minimal. In fact, plaintiff may have no need for the information if defendant chooses not to rely on the informers or their statements in its paragraph 2 submissions. Therefore, the interests in limited disclosure prevail at this point, and limited release of the information under the terms of the proposed protective order is appropriate and in accordance with the investigatory files and informer's privileges.

## CONCLUSION

Based on the foregoing, it is hereby **ORDERED**:

(1) Plaintiff's July 13, 1998 Motion to Compel Production of Documents is **DENIED**, without prejudice to the right to re-file the motion after further discovery and receipt of defendant's submissions required by paragraph 2 of the April 7, 1998 Pretrial Order;

(2) Defendant's September 2, 1998 Motion for a Protective Order is **GRANTED**. The proposed protective order attached to defendant's motion will be entered separately; and

(3) Not later than ten days after entry of the protective order, defendant shall produce to plaintiff's counsel, subject to the terms of

---

* The Pretrial Order requires defendant to identify all witnesses it intends to call at trial. Defendant is not relieved of this obligation even though some of the witnesses may be confidential informants. *See* 3 Weinstein & Berger, *supra*, § 510.07[3], at 510–15 (informer's privilege does not prevent entry of a pretrial order "requiring the government to identify its prospective witnesses at the forthcoming trial even though some of the witnesses may have been informers"); 26A Wright & Graham, *supra*, § 5710, at 404–05 (same).

the protective order, the privileged information discussed above.